Mark D. Lytle*
mlytle@nixonpeabody.com
NIXON PEABODY LLP
799 9th Street NW, Suite 500
Washington, DC 20001-5327
Tel: (202) 585-8000
Fax: (202) 585-8080
*Pro Hac Vice forthcoming

Aaron M. Brian (State Bar No. 213191)
abrian@nixonpeabody.com
NIXON PEABODY LLP
300 S. Grand Avenue, Suite 4100
Los Angeles, CA  90071-3151
Tel:  213-629-6000
Fax:  213-629-6001

Attorneys for Defendant
NO LABELS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAE STEWARD,<br><br>        Plaintiff,<br><br>    vs.<br><br>NO LABELS,<br><br>        Defendant. | Case No. 24-misc-80209-SVK<br><br>**NO LABELS' OPPOSITION TO RAE STEWARD'S MOTION TO QUASH OR FOR PROTECTIVE ORDER**<br><br>(Related to Case No. 1:23-cv-01384 (GBW) (SLC), pending in the United States District Court for the District of Delaware) |

4885-7487-4848.1

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................ 1

OPPOSITION TO MOTION TO QUASH OR FOR PROTECTIVE ORDER ............................. 1

I.    Introduction ............................................................................................................. 1

II.    Background .............................................................................................................. 2

    A.    No Labels Formed to Promote Message of Centrist Politics ................... 2

    B.    No Labels Sued Nolabels.com Inc. and Secured a TRO and Preliminary Injunction ................................................................................. 3

    C.    Discovery Reveals the Plot to Destroy No Labels Brand, and the Role that Steward's Organization Played ............................................................. 4

ARGUMENT ................................................................................................................................... 6

I.    Steward and Her Organization Were Part of the Coordinated Effort to Destroy No Labels Brand ...................................................................................... 6

II.    The Requested Discovery Is Relevant, Proportional, and Would Not Violate Anyone's First Amendment Rights ................................................................................ 8

    A.    The Requests at Issue Fall Within the Broad Scope of Discovery .......... 8

    B.    The Requests Are Relevant to the Underlying Action ............................ 8

    C.    The First Amendment Does Not Protect Speech That Infringes Intellectual Property Rights .................................................................... 9

CONCLUSION ............................................................................................................................. 10

4885-7487-4848.1

NO LABELS' OPPOSITION TO RAE STEWARD'S MOTION TO QUASH OR FOR PROTECTIVE ORDER

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arista Records LLC v. Doe*,
　604 F.3d 110 (2d Cir. 2010) .................................................................................................. 9, 10

*In re DMCA Subpoena to Reddit, Inc.*,
　441 F. Supp. 3d 875 (N.D. Cal. 2020) ................................................................................... 9, 10

*Everytown for Gun Safety Action Fund Inc. v. Defcad, Inc.*,
　2021 U.S. Dist. LEXIS 218103 (S.D.N.Y. Nov. 9, 2021) ........................................................... 9

*Gonzales v. Google, Inc.*,
　234 F.R.D. 674 (N.D. Cal. 2006) ................................................................................................ 8

*Interpace Corp. v. Lapp, Inc.*,
　721 F.2d 460 (3d Cir. 1983) ....................................................................................................... 7

*Kos Pharms., Inc. v. Andrx Corp.*,
　369 F.3d 700 (3d Cir. 2004) ....................................................................................................... 7

*Natera, Inc. v. CareDx, Inc.*,
　No. 23-MC-80117-LJC, 2023 WL 3763808 (N.D. Cal. May 31, 2023) .................................... 8

*Scalia v. Int'l Longshore & Warehouse Union*,
　337 F.R.D. 281 (N.D. Cal. 2020) ................................................................................................ 7

*United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*,
　128 F.3d 86 (2d Cir. 1997) ......................................................................................................... 7

**Statutes**

15 U.S.C. 1125(a) ........................................................................................................................ 1, 6

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 7

**Other Authorities**

https://www.adl.org/resources/hate-symbol/1488 .......................................................................... 5

**PRELIMINARY STATEMENT**

The underlying action pending in the District of Delaware, *No Labels v. Nolabels.com Inc.*, Case No. 23-cv-01384 ("Underlying Action") is for trademark infringement. Among other things, No Labels ("Plaintiff" or "No Labels") sued Nolabels.com, Inc. ("Defendant") for publishing a misleading website that intentionally looked like it came from No Labels, except that it was filled with language, imagery and pictures designed to confuse the public into believing No Labels—the federally registered trademark, and well-known centrist organization—stood for extreme right-wing political positions. The deception was not incidental:

> This is a real opportunity for us to **mirror the NL.ORG language** while also framing the entire NL project as a right-wing shadow effort by crafting language that **looks like it's coming from NL** as a **right-wing shadow group.**

Lucy Caldwell, a paid consultant for Investing in US ("IIU"), helped design the infringing website. Caldwell was IIU's "main point of contact for "managing the No Lables threat" and provided IIU an outline of her plans to make the No Labels brand "devastatingly toxic." Rae Steward, plaintiff in the instant matter, was the C.O.O. and Managing Partner at IIU.

At issue now is No Labels' reasonable attempt to gather additional evidence of the coordinate efforts to infringe its trademark by intentionally misleading the public about what the No Labels brand meant. Steward, the C.O.O. and Managing Partner of the organization that paid for Caldwell's work on this campaign, likely has materials that are directly relevant to the Underlying Action and the broader infringement of No Labels' trademark. The First Amendment does not protect Steward from having to produce information and materials that concerns the coordinated attempt to destroy the No Labels brand.

**OPPOSITION TO MOTION TO QUASH OR FOR PROTECTIVE ORDER**

**I.     Introduction**

Trademark infringement includes the publication of misleading facts that cause confusion about the origin, sponsorship or approval by another person. 15 U.S.C. 1125(a). That is what occurred here. The infringing website and corporate entity were meant to portray No Labels as something that it was not.

4885-7487-4848.1

No Labels has discovered that a web of political operatives were coordinating to stigmatize and destroy No Labels, and to make the brand so "devastatingly toxic" that donors, officials, and the public would not want to be associated with it. **Exhibit A; Exhibit B**.[1] A primary hub for this coordinated operation was Caldwell, the political consultant hired by IIU to manage the "No Labels threat." **Exhibit C**. Steward was COO and Managing Partner of Investing in US, and discovery has shown that she was in contact with Caldwell about her work on the "brand destruction" of No Labels.

A copy of the Subpoena is attached as **Exhibit D**. After the Subpoena was served, counsel met and conferred and No Labels agreed to narrow the Subpoena to a specific time frame, limit the subpoena to two requests, and to focus on a group of specially tailored search terms which could satisfy the remaining paragraphs contained in the subpoena attachment. **Exhibit E**, at 5.

The discovery requests at issue relate directly to the known and reasonably suspected scope of infringing conduct and have been narrowed in number and scope to limit any burden on Steward. Steward's motion should be denied.

## II.   Background

### A.  No Labels Formed to Promote Message of Centrist Politics

Plaintiff was founded in or about 2009 and has spent more than a decade nurturing and developing its unique brand of centrist politics that eschews the views of the extreme political left and right in favor of the middle—favoring common sense solutions to political and social problems. (See Declaration of Jerald S. Howe, Jr., attached as **Exhibit F**, at ¶ 5-6). Plaintiff owns a federal trademark registration for NO LABELS. The No Labels Registered Trademark (Reg. No. 3,946,066) was issued on April 12, 2011 in Class 35 and covers "Issue advocacy; Public advocacy to promote awareness of public policy options and political issues" (the "No Labels Registered Trademark"). **Exhibit F**, at ¶ 7. Plaintiff's independence, and its ability to exclusively control its reputation and the leaders with whom it is associated, is paramount to its mission. *Id.*, at ¶ 9.

No Labels relies heavily on its website (the "No Labels Website"), located at the domain nolabels.org. *Id.*, at ¶ 20. The No Labels Website landing page trumpets: "WELCOME TO THE

---

[1] All exhibit cites are to Exhibits to the Declaration of Aaron M. Brian, filed herewith.

4885-7487-4848.1

HOME FOR THE COMMONSENSE MAJORITY." It further states, "We are a national movement of commonsense Americans pushing our leaders together to solve our country's biggest problems." **Exhibit F**, at ⁋ 21.

### B. No Labels Sued Nolabels.com Inc. and Secured a TRO and Preliminary Injunction

No Labels has never authorized another person or entity to create a politically oriented website using its NO LABELS trademark. **Exhibit F,** at ⁋ 31. No Labels was surprised and then angered when it learned that someone had purchased the domain *nolabels.com* and was hosting a website (the "Infringing Website") that was designed to falsely evoke an association with the No Labels brand. *Id.*, at ⁋ 32. The Infringing Website promotes politicians and positions that are not affiliated with No Labels and with whom No Labels has no desire to be affiliated. *Id.*, at ⁋ 33. Such promotion was to deceive the American public, including voters and donors, into believing that supporting No Labels is tantamount to supporting former President Trump.

On December 4, 2023, Plaintiff filed the underlying action against Nolabels.com, Inc. **Exhibit G** (Complaint). Among other things, No Labels sought to end the Defendant's dishonest attempts to cause confusion as to No Labels' positions and affiliations. See **Exhibit G**, at ¶¶ 49-68. On December 15, 2023, the District Court in Delaware granted Plaintiff's motion for a Temporary Restraining Order and ordered Nolabels.com Inc. to: (1) take down and not restore the Infringing Website; and (2) cease all other activities that infringe the NO LABELS mark, including the use of the infringing mark in the defendant's corporate name. **Exhibit H** (Temporary Restraining Order). The Delaware District Court later granted a Preliminary Injunction, ordering Nolabels.com Inc to: (1) take down and not restore the Infringing Website; (2) direct the Registrar to deactivate the Infringing Domain and transfer the registration to Plaintiff; and (3) take all necessary steps to change its corporate name to a new name that does not incorporate the NO LABELS mark. **Exhibit I** (Preliminary Injunction Order). The court also found and ordered that "Plaintiff is authorized to conduct discovery to, *inter alia*, ascertain the identity of all individuals and organizations involved in the Infringing Website and Infringing Domain as well as to determine Defendant's intent and the scope of the infringement." **Exhibit I**, at 2.

**C. Discovery Reveals the Plot to Destroy No Labels Brand, and the Role that Steward's Organization Played**

The Infringing Website was a public manifestation of the attack on No Labels brand. Discovery in the Underlying Action has disclosed behind-the-scenes efforts to stigmatize and destroy No Labels brand, including what led to the Infringing Website. Among these efforts, which have been partially uncovered, were those carried out by IIU and its paid consultant Lucy Caldwell. Steward has identified herself as the C.O.O. and Managing Partner for IIU. **Exhibits J** and **K**. IIU retained Caldwell to deal with the "No Labels threat." **Exhibit C**. Caldwell sent IIU an outline for making the No Labels brand so "devastatingly toxic" that donors, officials, and the public would not want to be associated with the brand. **Exhibit B** ("main focus should be brand destruction.")

Caldwell later attended secret meetings on behalf of IIU that were specific to subverting No Labels. **Exhibit A**, and **Exhibit L** (at 131:13-132:8). Caldwell then worked with longtime collaborator, Charles Siler, on the Infringing Website: she communicated with him about acquiring the domain; she provided edits to early versions of the website content; helped select misleading images and pictures for the website; and helped select Google Adwords to misdirect people searching for No Labels to the Infringing Website instead. **Exhibit M** (at 14:21-15:18; 62:15-63:4; 71:24-72:6; 73:4-23; 136:14-137:10). Siler created a pitch deck outlining their plans for the trademark infringing domain:

> This is a real opportunity for us to ***mirror the NL.ORG language*** while also framing the entire NL project as a right-wing shadow effort by crafting language that ***looks like it's coming from NL*** as a ***right-wing shadow group.***
>
> Examples would be by fixating on red meat issues that can be fixed with the unity of "real" Americans, such as Immigration, welfare waste, war spending in Ukraine, and possibly anti-abortion messaging. […]
>
> We could potentially even include a running poll on the site to see who people want to see become the NL POTUS nominee/ticket, and then we can just rig our own poll to make it look as **it as possible.
>
> Here we can really put the most ****ed up SCOTUS decisions from the 1950's and earlier and herald them as a time of bipartisanship and unity, and talk about how great a future we could have with nominees picked by the ****bags at NL.

**Exhibit N**, at Nolabels.com 000257, 262, 264.

4885-7487-4848.1

Siler's pitch deck further explained how such misleading language could include: "overt Christo-nationalist dog whistles (eg. NL now has ballot access in **14** states with support in **88** counties.)."[2]  **Exhibit N**, at Nolabels.com 000256.  In addition, and especially relevant here, Siler's pitchdeck implied there are other organizations and projects underway that are meant to target No Labels' image and trademark: "This also could create a resource we could direct leads from other projects . . ." *Id.*, at Nolabels.com 000265.  Siler would explain how "dog whistles" and other coded messaging would allow them to misleadingly present No Labels as a "right wing shadow effort." **Exhibit M** (at 221:7-224:1).

In addition to their paid consultant's work on the website, IIU's co-founder Dmitri Mehlhorn proposed other "creative" methods to socially stigmatize No Labels' personnel, Nancy Jacobson and Mark Penn, along with their allies, including:

- **Wheatpasting:** We'll design a poster showing the link between Nancy, Mark ans [sic] Trump to post up all over their Georgetown community, around their offices, and on the hill. We also make a smaller version of this posters to drop off at the homes within their community. We can hire getty to take pictures so they live on the wire to ve [sic] used by reporters. […]

- **Mobile Billboards** - These are fun to be able to use video and audio to shame Nancy, Mark, and the whole No Labels crew. This would be great both for her neighborhood, office area, big events like WHCA and other pop up moments where they can be effectively shamed.

- **Wake Up Actions** - Everyone loves a good wake up action- especially the neighbors. For this, we'd show up at 6am with a truck carrying musical performers and activists marching and chanting. It usually lasts for an hour. We can hire getty to get the event on the wire.

**Exhibit O**, at Caldwell 000302-303.

The work by IIU and Steward and their paid consultant on this coordinated effort to misrepresent No Labels goes directly to the heart of Plaintiff's complaint. Steward personally communicated with Caldwell about No Labels from her "investingin.us" email address and

---

[2] Pursuant to the Anti-Defamation League, "1488 is a combination of two popular white supremacist numeric symbols. The first symbol is 14, which is shorthand for the "14 Words" slogan: "We must secure the existence of our people and a future for white children." The second is 88, which stands for "Heil Hitler" (H being the 8th letter of the alphabet). Together, the numbers form a general endorsement of white supremacy and its beliefs. As such, they are ubiquitous within the white supremacist movement . . ." *See also* https://www.adl.org/resources/hate-symbol/1488.

attended meetings with Caldwell about No Labels around the time the infringing website was published. **Exhibits J, P, Q** (discussing meetings with other operatives to share update on various efforts against No Labels).

What we know about Steward and her organization's involvement comes from Caldwell's document production and deposition. It is entirely reasonable to expect Steward to have more information in her possession about the coordinated effort to destroy the No Labels brand. Moreover, counsel for Steward has claimed that IIU is not a legal entity and is not capable of being served a subpoena. Brian Declaration, ¶ 23. If true, the requests directed at Steward are even more important to No Labels' case because the organization that paid Caldwell for her work on the "No Labels threat" cannot, apparently, respond to any requests for documents or information.

The requests are tailored to relevant issues and to specific individuals and entities known to have infringed No Labels' trademark. Moreover, the search terms are limited to those extreme positions and candidates that Nolabels.com Inc. and its collaborators (including the paid consultant Caldwell) were falsely trying to attach to the No Labels brand.

## ARGUMENT

**I.  Steward and Her Organization Were Part of the Coordinated Effort to Destroy No Labels Brand**

It is evident from what has been produced so far (and what was partially reported in the press) that there was a coordinated effort to destroy the No Labels brand and make it devastatingly, socially and professionally toxic by falsely associating it with extreme candidates and issues. Steward and IIU were involved in that effort. The Underlying Action involves claims for violation of Section 43(a) of the Lanham Act, which imposes civil liability on any person who:

> in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device ... or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person ... or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...."

15 U.S.C. 1125(a).

The term "services" has been interpreted broadly under the Lanham Act. Indeed, "[t]he right to enjoin infringement of a trade or service mark 'is as available to public service organizations as

4885-7487-4848.1

- 6 -
NO LABELS' RESPONSE TO RAE STEWARD'S MOTION TO QUASH OR FOR PROTECTIVE ORDER

to merchants and manufacturers'" and the Lanham Act has been applied to organizations offering a "wide variety of non-commercial public and civil benefits," including political organizations—even if those organizations do not "place products into the stream of commerce." See *United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86, 89-90 (2d Cir. 1997) (further citations omitted). A partial picture of the infringing conduct has emerged, and, as a result, the court in Delaware has issued a Preliminary Injunction and a TRO. No Labels is now seeking additional discovery into the coordinated, and illegal, conduct, as is its right under the law.

To determine the scope of infringement, one must examine evidence related to the misleading and confusingly similar content that was presented. The Underlying Action is pending in the Third Circuit, where courts consider a variety of factors when evaluating the likelihood of confusion. *See Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983). Relevant factors include: (a) the intent of the defendant in adopting the mark; (b) whether the goods, are advertised through the same media; (c) whether targets of the parties' sales efforts are the same; (d) the relationship of the goods in the minds of consumers; and (e) other facts suggesting that the consuming public might expect the prior owner to manufacture both products. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708-709 (3d Cir. 2004).

The relevant factors are each implicated by Steward and her organization's connection to Nolabels.com Inc.'s infringing conduct, including assistance their consultant Lucy Caldwell provided to create the Infringing Website. Accordingly, the requested discovery is relevant and Steward should be ordered to produce responsive documents and sit for her deposition.

**II.     The Requested Discovery Is Relevant, Proportional, and Would Not Violate Anyone's First Amendment Rights**

**A.     The Requests at Issue Fall Within the Broad Scope of Discovery**

A party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence." *Scalia v. Int'l Longshore & Warehouse Union*, 337 F.R.D. 281, 288 (N.D. Cal. 2020) (internal citation omitted). "The party

4885-7487-4848.1

1  resisting discovery 'has the burden to show that discovery should not be allowed, and has the
2  burden of clarifying, explaining, and supporting its objections.'" *Id.* (internal citation omitted); *see*
3  *also Natera, Inc. v. CareDx, Inc.*, No. 23-MC-80117-LJC, 2023 WL 3763808, at *2 (N.D. Cal. May
4  31, 2023) (noting Rule 26's "broad policy favoring full discovery"). Moreover, if the court's "only
5  connection with a case is supervision of discovery ancillary to an action in another district" the
6  court "should be especially hesitant to pass judgment on what constitutes relevant evidence
7  thereunder. **Where relevance is in doubt ... the court should be permissive**." *Gonzales v. Google,*
8  *Inc.*, 234 F.R.D. 674, 681 (N.D. Cal. 2006) (emphasis added).

### B. The Requests Are Relevant to the Underlying Action

Plaintiff has shown how Steward and her organization's conduct is related directly to public actions Nolabels.com Inc. took that infringe No Labels' trademark and the use of the Infringing Website—as part of a concerted effort—to mislead the public about the political positions and candidates that No Labels actually supports, further damaging the registered mark. Steward's involvement brings her within the scope of permitted discovery regarding the trademark claims against Nolabels.com, Inc. Although not mentioned in the motion to quash, <u>No Labels agreed to limit the scope of the Subpoena</u>. **Exhibit E**, at 5. The two document requests and targeted word searches are narrowly tailored to elicit information relevant and proportional to the claims at issue.

Document request number 3 seeks documents that concern one of a handful of people or entities ***and*** No Labels, Nolabels.com, Inc. or the relevant websites. **Exhibit D**. Discovery has identified the persons and entities that have some connection to Defendant's development, design, and activation of the Infringing Website, which are discussed below. This request will recover only those documents that concern one of these relevant individuals or entities ***and*** the plaintiff or defendant or the websites relevant in the underlying Action.

- <u>Joshua Silver</u> is employed by <u>RT Group</u>, an LLC he set up for his political consulting services. (**Exhibit R**, Deposition of Joshua Silver ("Silver Depo."), taken on February 15, 2024, at 14:6-15:12). Silver is also the principal of <u>American Patriot Project</u> ("APP"). (*Id.*, at 17:25-18:23; 19:22-20:3). APP was formed on or about September 26, 2023, and provided funding that was used to purchase the infringing domain. (*Id.*, at 20:4-8; 21:2-8; 23:8-16).

4885-7487-4848.1

- Charles Siler and Lucy Caldwell, and the parts they played in creating the Infringing Website, are discussed above. Break Something is a company that consults with APP, and helped create the Infringing Website, Nolabels.com. Stephen Solomon runs Break Something. (**Exhibit R**, at 27:19-25).

Document request number 5 only seeks non-privileged communications concerning the Underlying Action. Steward's communications about the Underlying Action would be relevant to that case and may shed even further light on her involvement in the alleged infringements.

Furthermore, the list of proposed search terms (**Exhibit E**, at 5), to be used in lieu of any other document requests, are similarly based on Nolabels.com, Inc.'s actual infringing conduct, including attempts to misleadingly associate No Labels brand with particular right-wing candidates and positions. See, e.g., **Exhibit M**, Siler depo, at 219:2-223:9.

Steward failed to carry her burden to show the limited discovery at issue is irrelevant, burdensome, or should otherwise be quashed.

C.  **The First Amendment Does Not Protect Speech That Infringes Intellectual Property Rights**

Steward argues that the First Amendment shields her from having to produce documents responsive to the Subpoena. Without question, the First Amendment provides some protection against unwarranted intrusion into a person's beliefs or the organizations he or she supports. And there may well be some communications between Steward and others about No Labels that are protected by the First Amendment; but that protection does not extend to discussions about the "brand destruction" of No Labels, how to make No Labels "devastatingly toxic," and other efforts to misrepresent and confuse the public about what No Labels stands for. **Exhibit B**. "[A]nonymity is not protected to the extent that it is used to mask the infringement of intellectual property rights, including trademark rights." *Everytown for Gun Safety Action Fund Inc. v. Defcad, Inc.*, 2021 U.S. Dist. LEXIS 218103 (S.D.N.Y. Nov. 9, 2021) (citing *Arista Records LLC v. Doe*, 604 F.3d 110, 118 (2d Cir. 2010). "To the extent that anonymity is used to mask [IP] infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment." *Arista Recs.*, 604 F.3d at 118.

This Court has cited *Arista* with approval.  *See*, *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 882 (N.D. Cal. 2020) ("the First Amendment does not protect anonymous speech that infringes copyright.") The *Arista* decision recites the widely adopted five-part test: (1) the concreteness of plaintiff's showing of a *prima facie* claim of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the need for the subpoenaed information to advance the claim; and (5) the objecting party's expectation of privacy.  *Arista*, 604 F.3d at 119.  All five factors favor No Labels.

The Delaware District Court has already ruled that No Labels is likely to succeed on its Lanham Act claims.  And the shared agenda to destroy No Label's brand is a clear violation of No Labels' right to control its brand and the message it conveys.  The shared agenda to make No Labels ***devastatingly toxic*** by misrepresenting its mission is obvious.  The full extent of Steward's contribution remains to be seen, and she is the best source for obtaining information about the role she and IIU played in efforts to destroy the No Labels brand.  The limited discovery requests are for information that is needed to advance Plaintiff's Lanham Act claims.

The discovery at issue does not infringe on Steward's First Amendment rights.  No Labels is not seeking information about Steward's political positions, beliefs or affiliations.  No Labels is seeking evidence of the coordinated effort to infringe its trademark – the most public manifestation of which is the Infringing Website.

## CONCLUSION

No Labels respectfully asks the Court to deny the Motion and order Steward to produce documents responsive to Requests 3 and 5, to run the word searches set forth on **Exhibit E**, at 5, and to appear for deposition to provide testimony on the same relevant subject matters.

4885-7487-4848.1

|   |   |   |
|---|---|---|
| 1 | Dated: September 3, 2024 | NIXON PEABODY LLP |

By: */s/Aaron M. Brian*
    Aaron M. Brian
    Mark D. Lytle
    Attorneys for Defendant
    NO LABELS

4885-7487-4848.1

- 11 -
NO LABELS' RESPONSE TO RAE STEWARD'S MOTION TO QUASH OR FOR PROTECTIVE ORDER